IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THE RELIZON COMPANY AND
WORKFLOW SOLUTIONS, LLC,                :

          Plaintiff,
                            :      Case No. 3:10-cv-145

        v.                            JUDGE WALTER H. RICE

CRAIG W. SEYBOLD, *et al.*,                :

          Defendants.                :

---

DECISION AND ENTRY SUSTAINING MOTION FOR SUMMARY
JUDGMENT BY CROSS-CLAIM DEFENDANTS ANDREW KAMINSKY
AND CRAIG SEYBOLD (DOC. #142); OVERRULING AS MOOT
MOTION OF DEFENDANTS/CROSS-CLAIM PLAINTIFFS GNJ
ASSOCIATES, INC. D/B/A PROFORMA SPECTRUM GRAPHICS AND
JOHN VENTO, JR., TO STRIKE CROSS-CLAIM DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DOC. #146); SETTING
CONFERENCE CALL TO DISCUSS REMAINING CLAIMS AGAINST
DEFENDANT RACHEL NEUFELD

---

This matter is currently before the Court on two pending motions:  (1)

Motion for Summary Judgment by Cross-Claim Defendants Andrew Kaminsky and

Craig Seybold (Doc. #142); and (2) Motion of Defendants/Cross-Claim Plaintiffs

GNJ Associates, Inc., d/b/a Proforma Spectrum Graphics and John Vento, Jr., to

Strike Cross-Claim Defendants' Motion for Summary Judgment (Doc. #146).  For

the reasons set forth below, the Court SUSTAINS the Motion for Summary

Judgment (Doc. #142), albeit on different grounds than raised by the Cross-Claim

Defendants, and OVERRULES AS MOOT the Motion to Strike (Doc. #146).

## I.    Background and Procedural History

Craig Seybold, G. Andrew Kaminsky and Rachel Neufeld left their jobs at

The Relizon Company and Workflow Solutions LLC ("Workflow") and went to work

for a direct competitor, GNJ Associates, Inc., d/b/a Proforma Spectrum Graphics

("GNJ"), taking numerous clients with them.  Workflow later filed suit against

Seybold, Kaminsky, and Neufeld, and against GNJ and its President, John Vento,

Jr. ("Vento").  The Third Amended Complaint includes claims of breach of

contract, misappropriation of trade secrets, tortious interference with business

relationships/contracts, breach of fiduciary duty, unfair competition, civil

conspiracy, and tortious interference with contract.   Doc. #104.

Defendants filed numerous counterclaims and cross-claims for

indemnification and contribution.  On August 21, 2012, having been incorrectly

informed by counsel that all parties had reached a tentative settlement, the Court

terminated the case in its entirety.  Doc. #113.  On October 15, 2012, GNJ and

Vento filed a Motion to Vacate the Order of Dismissal, Doc. #115, arguing that

only the claims between Workflow, GNJ and Vento had been settled.  The Court

sustained that motion on October 30, 2012.[1]

In the meantime, on September 17, 2012, Workflow, Seybold and Kaminsky

filed a Stipulation of Consent to Judgment, Doc. #114, wherein Seybold and

Kaminsky admitted the allegations asserted against them in the Second Amended

---

[1]   On March 29, 2013, the Court overruled Seybold and Kaminsky's Motion for
Reconsideration.  Doc. #125.  On July 8, 2013, the Court overruled their Motion
for Permission to Appeal that Order.  Doc. #136.

Complaint. Kaminsky and Seybold agreed to pay $35,000 each to settle their claims with Workflow, and agreed to testify at trial without need for subpoenas. Exs. 1 and 2 to Doc. #146. On September 25, 2012, GNJ and Vento agreed to pay $650,000 to settle their claims with Workflow. That settlement agreement contained no admission of liability, and the parties expressly reserved their claims against Seybold, Kaminsky and Neufeld. Ex. 5 to Doc. #146.

Still pending are Workflow's claims against Neufeld, and GNJ and Vento's cross-claims for contribution and indemnification against Seybold, Kaminsky, and Neufeld. On December 9, 2013, Seybold and Kaminsky moved for summary judgment on the cross-claims. Doc. #142. GNJ and Vento then moved to strike that motion, arguing that the evidence submitted in support was not properly authenticated. In the alternative, GNJ argued that genuine issues of material fact precluded summary judgment on the cross-claims. Doc. #146. Seybold and Kaminsky then filed their reply brief. Doc. #148.

On February 28, 2014, the Court issued an Order directing the parties to show cause why the cross-claims for contribution and indemnity should not be dismissed as a matter of law for reasons other than those raised by Seybold and Kaminsky in their motion for summary judgment. Doc. #149. *See Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013) ("After giving notice and time to respond, a district court may grant summary judgment on grounds not raised in a party's motion for summary judgment."); Fed. R. Civ. P. 56(f)(2). That Show Cause Order has now been fully briefed. Before examining the merits of the

3

cross-claims, the Court turns briefly to the evidentiary objections to the motion for summary judgment.

## II.    Motion to Strike (Doc. #146)

GNJ and Vento have moved to strike Seybold and Kaminsky's Motion for Summary Judgment, alleging that it relies on unauthenticated deposition testimony and other unauthenticated documents.  In response, Seybold and Kaminsky argue that the alleged defects have either now been cured, or are non-existent.

For the reasons set forth below, because the Motion for Summary Judgment can be fully adjudicated without considering any of the allegedly defective exhibits attached to the motion, the Court need not resolve the objections.  GNJ and Vento's Motion to Strike (Doc. #146) is therefore OVERRULED AS MOOT.

## III.    Motion for Summary Judgment (Doc. #142)

Seybold and Kaminsky have moved for summary judgment on GNJ's cross-claims for indemnification and contribution.  In so moving, they argue that the claims for indemnification fail because there is no express contract of indemnity. They also argue that, because GNJ committed intentional torts, the claims for contribution and indemnity are barred as a matter of law.  Doc. #142.[2]

---

[2]    Seybold and Kaminsky maintain that GNJ solicited them and other Workflow employees, knowing that they were bound by non-compete agreements and confidentiality agreements, and that GNJ encouraged them to bring Workflow's clients with them, in violation of non-solicitation agreements.

4

In response, GNJ argues that the employer-employee relationship may give rise to an *implied* contract of indemnity. It further notes that, in its settlement with Workflow, it did not admit liability on any of the tort claims asserted. GNJ maintains that, based on the evidence presented, a reasonable jury could find that GNJ was not a joint intentional tortfeasor. GNJ further argues that because there is substantial evidence that Seybold and Kaminsky entered into their settlement agreements with Workflow in bad faith, the contribution claim is not subject to dismissal on summary judgment. Doc. #146.

Seybold and Kaminsky's reply is that they are entitled to summary judgment because there are no genuine issues of material fact concerning at least two of Workflow's intentional tort claims against GNJ -- intentional interference with performance of a contract, and civil conspiracy. Doc. #148.

On February 28, 2014, the Court issued a Show Cause Order, Doc. #149, ordering the parties to address three additional issues: (1) application of *O'Neill v. Showa Denko K.K.*, 101 Ohio App.3d 345, 655 N.E.2d 767 (Ohio Ct. App. 1995); (2) the effect of Workflow having entered into *separate* settlement agreements with GNJ/Vento and Seybold/Kaminsky; and (3) the viability of the claim for indemnity given that no "judgment" was recovered. Those matters having been fully briefed, the Court is now prepared to rule on the pending motion.

### A.    Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

6

matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### B.    Indemnity

GNJ alleges that Seybold and Kaminsky are obligated to indemnify it for the $650,000 it paid to settle its claims with Workflow. Seybold and Kaminsky argue that GNJ is not entitled to indemnification because, under Ohio common law, there is no right of indemnity between joint tortfeasors. *Reynolds v. Physicians Ins. Co. of Ohio*, 68 Ohio St.3d 14, 16, 623 N.E.2d 30, 31-32 (Ohio 1993)

7

("Indemnification is not allowed when the two parties are joint or concurrent tortfeasors . . ."); *Mahathiraj v. Columbia Gas of Ohio, Inc.*, 84 Ohio App.3d 554, 564, 617 N.E.2d 737, 744 (Ohio Ct. App. 1992) ("where two parties actively participate in the commission of a tort they are deemed concurrent or joint tortfeasors, and no right of indemnification exists between the two . . .").

GNJ acknowledges that this is a correct statement of the law, but notes that it settled all claims with Workflow without admitting liability for any of the alleged torts. In response, Seybold and Kaminsky ask the Court to now allow them to step into the shoes of Workflow, to prove that GNJ is, in fact, liable for the intentional torts alleged. In the Court's view, Seybold and Kaminsky are not entitled to do so.

A somewhat similar situation arose in *O'Neill v. Showa Denko K.K.*, 101 Ohio App. 3d 345, 655 N.E.2d 767 (Ohio Ct. App. 1995). A group of plaintiffs filed suit against Showa Denko, K.K. ("SDKK"), a vitamin supplement manufacturer, and against Revco, the drug store distributor. Revco filed a cross-claim for indemnity against SDKK. After SDKK settled its claims with the plaintiffs, the plaintiffs voluntarily dismissed the claims against Revco. SDKK and Revco then filed cross-motions for summary judgment on Revco's cross-claim seeking indemnification for attorney fees and costs.

The court noted that Revco was not entitled to indemnification unless SDKK was at fault in causing the plaintiffs' injuries. There had been no such finding of liability in connection with SDKK's settlement with the plaintiffs. *Id.* at 349, 655

8

N.E.2d at 770. Revco asked that the case be remanded so that it could prove that

SDKK was liable on the underlying claims, but the court refused.

> In essence, Revco asks that it be permitted to assume the plaintiffs'
> position and prosecute their now dismissed claims against SDKK.
> Aside from the obvious legal hurdles attendant to calling the settled
> plaintiffs as witnesses against SDKK, we are aware of no authority or
> public policy in this state that would permit Revco to reopen plaintiffs'
> case against SDKK in order that Revco might prove SDKK's liability.
> Permitting Revco to proceed in this manner would ultimately defeat
> the public policy of limiting judicial resources and preserving the
> finality of settlement agreements.

*O'Neill*, 101 Ohio App.3d at 351, 655 N.E.2d at 770.

The Court finds this reasoning extremely persuasive. Workflow and GNJ

settled all claims between them without any admission of liability. Seybold and

Kaminsky are not now, in their effort to *defend* against GNJ's cross-claim for

indemnification, permitted to reopen Workflow's case against GNJ in an attempt to

prove that GNJ is liable on the underlying tort claims.

Nevertheless, GNJ's claim for indemnification still fails as a matter of law.

GNJ cites to *Globe Indemnity Co. v. Schmitt*, 142 Ohio St. 595, 53 N.E.2d 790

(Ohio 1944), in which the court held that a party who has settled a claim may be

entitled to indemnification if: (1) proper and timely notice was given to the one

from whom indemnity is sought; (2) the one seeking indemnity was legally liable to

respond; and (3) the settlement was fair and reasonable. *Id.* at 604, 53 N.E.2d at

794.

However, the party seeking indemnification must first establish a legal right

to indemnification. *Convention Center Inn, Ltd. v. Dow Chem. Co.*, 70 Ohio

9

App.3d 243, 246, 590 N.E.2d 898, 900 (Ohio Ct. App. 1990) ("one party must be 'chargeable' for the wrongful act of another as a prerequisite for indemnity.") "Indemnification occurs when one who is primarily liable is required to reimburse another who has discharged a liability for which that other is only secondarily liable." *Krasny-Kaplan Corp. v. Flo-Tork, Inc.*, 66 Ohio St.3d 75, 78, 609 N.E.2d 152, 154 (Ohio 1993). The plaintiff asserting the claim "seeks complete reimbursement from the party primarily liable for damages he or she has incurred." *Wagner-Meinert, Inc. v. EDA Controls Corp.*, 444 F. Supp.2d 800, 803-04 (N.D. Ohio 2006).

Under Ohio law, a claim of indemnity must arise from an express or implied contract. *Id.* Here, GNJ has not identified any express agreement whereby Seybold and Kaminsky agreed to indemnify GNJ. It instead claims an implied contract based on the employer/employee relationship. As the court noted in *Reynolds*, "[a]n implied contract of indemnity should be recognized in situations involving related tortfeasors, where the one committing the wrong is so related to a secondary party as to make the secondary party liable for the wrongs committed solely by the other." 68 Ohio St.3d at 16, 623 N.E.2d at 31.

In certain cases, the employer/employee relationship may give rise to an implied contract of indemnity. *Id.* An employer may be vicariously liable for an employee's tortious acts, based on agency principles. In such a situation, an employer who discharges that liability may seek indemnification from the

10

employee. *See Convention Center Inn*, 70 Ohio App.3d at 247, 590 N.E.2d at 900.

> When two or more persons are or may be liable for the same harm and one of them discharges the liability of another in whole or in part by settlement or discharge of judgment, the person discharging the liability is entitled to recover indemnity in the amount paid to the plaintiff, plus reasonable legal expenses, if: (1) the indemnitor has agreed by contract to indemnify the indemnitee, or (2) the indemnitee (i) was not liable *except vicariously for the tort of the indemnitor*. . .

*Restatement (Third) of Torts: Apportionment of Liability*, § 22(a) (emphasis added).

Notably, in this case, Workflow did not seek to hold GNJ *vicariously* liable for wrongs committed solely by GNJ's employees. Rather, Workflow alleged that GNJ, Vento, Seybold, Kaminsky, and Neufeld were all active participants in the misappropriation of trade secrets, tortious interference with business relationships, unfair competition, civil conspiracy, and tortious interference with contracts. Doc. #104. Regardless of whether GNJ's individual liability for the alleged wrongdoing has been established, the facts, as alleged, do not give rise to an implied contract of indemnity.[3] For this reason, GNJ is not entitled to indemnification.

In addition, the Court notes that, in its cross-claim, GNJ sought indemnification only "if judgment is recovered" by Workflow. Doc. #107, PageID#825. Because GNJ settled its claims with Workflow, no "judgment" was

---

[3] Since Seybold and Kaminsky had already fully settled their individual claims with Workflow, it may be presumed that the GNJ's later settlement with Workflow was aimed, in whole or in part, at extinguishing its own *direct* liability on the claims alleged.

11

recovered. At least two Ohio courts have held that parties seeking indemnification are bound by the express language of their claims. In *Satterfield v. St. Elizabeth Health Ctr.*, 159 Ohio App.3d 616, 620, 824 N.E.2d 1047, 1050-51 (Ohio Ct. App. 2005), the cross-claim sought indemnity if the defendant "should be found liable." The court found that, because the parties settled their claims without establishing liability, the defendant was not entitled to indemnification. Likewise, in *O'Neill*, because "Revco's cross-claim sought indemnity only in the event plaintiffs received a judgment against SDKK," and there was a settlement rather than a judgment, the court held that recovery was barred by the terms of the cross-claim. *O'Neill*, 101 Ohio App. 3d at 349, 655 N.E.2d at 770.

For these reasons, the Court SUSTAINS Seybold and Kaminsky's Motion for Summary Judgment on the claim for indemnification.

### C. Contribution

GNJ also seeks contribution from Seybold and Kaminsky toward the $650,000 it paid to settle its claims with Workflow.

#### 1. Ohio Law

Under Ohio law, claims for contribution are governed by statute. The relevant sections are set forth below.

> (A) Except as otherwise provided in sections 2307.25 to 2307.28 of the Revised Code, if one or more persons are jointly and severally liable in tort for the same injury or loss to person or property or for the same wrongful death, there may be a right of contribution even though judgment has not been recovered against all or any of them. The right of contribution exists only in favor of a tortfeasor who has paid more than that tortfeasor's proportionate share of the common

12

liability, and that tortfeasor's total recovery is limited to the amount paid by that tortfeasor in excess of that tortfeasor's proportionate share. No tortfeasor may be compelled to make contribution beyond that tortfeasor's own proportionate share of the common liability. There is no right of contribution in favor of any tortfeasor against whom an intentional tort claim has been alleged and established.

(B) A tortfeasor who enters into a settlement with a claimant is not entitled to contribution from another tortfeasor whose liability for the injury or loss to person or property or the wrongful death is not extinguished by the settlement, or in respect to any amount paid in a settlement that is in excess of what is reasonable.

Ohio Rev. Code § 2307.25.

When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons for the same injury or loss to person or property or the same wrongful death, both of the following apply:

(A) The release or covenant does not discharge any of the other tortfeasors from liability for the injury, loss, or wrongful death unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of the greater of any amount stipulated by the release or the covenant or the amount of the consideration paid for it, except that the reduction of the claim against the other tortfeasors shall not apply in any case in which the reduction results in the plaintiff recovering less than the total amount of the plaintiff's compensatory damages awarded by the trier of fact and except that in any case in which the reduction does not apply the plaintiff shall not recover more than the total amount of the plaintiff's compensatory damages awarded by the trier of fact.

(B) The release or covenant discharges the person to whom it is given from all liability for contribution to any other tortfeasor.

Ohio Rev. Code § 2307.28.

### 2. Discussion

In moving for summary judgment on this claim, Seybold and Kaminsky rely on Ohio Revised Code § 2307.25(A), arguing that GNJ's claim fails as a matter of

law because there is "no right of contribution in favor of any tortfeasor against whom an intentional tort claim has been alleged and established." In response, GNJ again notes that it has not been "established" that GNJ committed *any* intentional tort; its settlement agreement with Workflow contains no admission of liability. Seybold and Kaminsky then again ask that they be permitted to stand in Workflow's shoes, in an attempt to prove that GNJ is liable for intentional interference with performance of a contract and for civil conspiracy. They maintain that there is no genuine issue of material fact with respect to these two intentional torts.

Had GNJ admitted liability, or otherwise been adjudicated liable on one of the intentional tort claims, there is no question that its contribution claim would be barred by Ohio Revised Code § 2307.25(A). However, given that GNJ settled its claims with Workflow without admitting liability, this defense is no longer available to Seybold and Kaminsky. For the same reasons discussed above, Seybold and Kaminsky are not permitted to reopen Workflow's case against GNJ in an attempt to establish that GNJ committed an intentional tort. *See O'Neill*, 101 Ohio App.3d at 351, 655 N.E.2d at 770. Therefore, we look further to determine the viability of the contribution claim.

In its Show Cause Order, the Court also raised the question of whether GNJ's claim of contribution was barred by the fact that GNJ's settlement agreement with Workflow did not *contemporaneously* extinguish Seybold and Kaminsky's liability to Workflow. Workflow had settled its claims with Seybold

14

and Kaminsky *before* settling its claims with GNJ.  The Court noted that Ohio
Revised Code § 2307.25(B) states that "[a] tortfeasor who enters into a
settlement with a claimant is not entitled to contribution from another tortfeasor
whose liability . . . is not extinguished by *the* settlement."  (emphasis added).  This
implied that GNJ had no right to contribution unless it had extinguished the entire
common liability.[4]

In response to the Show Cause Order, GNJ cites to *MetroHealth Medical
Center v. Hoffman-Laroche, Inc.*, 80 Ohio St.3d 212, 215, 685 N.E.2d 529, 532
(Ohio 1997), in which the Ohio Supreme Court cited "the evident purpose of the
statutory scheme to make contribution readily available between joint tortfeasors."
The court explained that the primary purpose of Ohio Revised Code § 2307.31(B),
recodified in Ohio Revised Code § 2307.25(B), "was to prevent the inequitable
situation of a tortfeasor paying contribution to a fellow tortfeasor who has settled
*and* remaining subject to liability on the underlying claim."  The legislature wanted
to "ensure that no contribution defendant would be subject to double liability."  *Id.*
at 216, 685 N.E.2d at 533.  In *MetroHealth*, there was no risk of double liability
because the statute of limitations had already run, thereby extinguishing liability on
the underlying claim.  Therefore, even though the contribution defendant's liability
was not "extinguished by the settlement," the contribution claim could proceed.

---

[4]  There is case law to this effect in other jurisdictions that have adopted similar
statutes.  *See, e.g., Schuman v. Vitale*, 602 A.2d 390 (Pa. Commw. Ct. 1992).

This case is obviously factually distinguishable in that Workflow's claims against Seybold and Kaminsky are not barred by the statute of limitations. Nonetheless, given the stated purpose of § 2307.25(B), the Court is satisfied that GNJ's contribution claims are not barred by the operation of that subsection of the statute. By the time GNJ settled its claims with Workflow, Seybold and Kaminsky's liability to Workflow had already been fully resolved, and they were no longer subject to liability on the underlying claims. Moreover, if § 2307.25(B) is read to bar all contribution claims against all earlier-settling co-defendants, this would render superfluous § 2307.28(B), which releases earlier-settling defendants, who settled their claims in good faith, from liability for contribution. Such an interpretation would be untenable. *See National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) (noting that the words of a statute must be read "with a view to their place in the overall statutory scheme.").

Therefore, the only remaining question is whether Seybold and Kaminsky settled their claims with Workflow in good faith. If they did, they are discharged from all liability for contribution to GNJ. As explained in *Mahathiraj v. Columbia Gas of Ohio, Inc.*, 84 Ohio App.3d 554, 617 N.E.2d 737 (Ohio Ct. App. 1992),

> a totality of the circumstances test should be applied in determining
> whether or not a settlement in a joint tortfeasor case is reached in
> "good faith" for purposes of R.C. 2307.32(F). In making such
> determinations, courts may consider the proportion and amount of
> liability the settling and nonsettling parties might respectively bear at
> trial, but are not specifically required to make proportionate liability
> calculations. Other factors courts may consider include, but are not
> limited to, whether the challenging party has demonstrated evidence
> indicating collusion, fraud or other tortious or wrongful conduct on the

16

part of the settling parties. A court may determine the good faith of a settlement based solely upon the arguments of counsel, based upon affidavits, depositions, and other discovery materials of record, or after conducting an evidentiary hearing. The standard of review from such decisions is one of abuse of discretion.

*Id.* at 562, 617 N.E.2d at 742.[5]

In this case, the Court finds no need for an evidentiary hearing. Having reviewed the materials submitted by the parties, the Court determines that, viewing the totality of the circumstances, Seybold and Kaminsky settled their claims with Workflow in good faith. A tentative settlement was reached in February of 2012, and finalized in March of 2012. In exchange for $35,000 each, a promise to provide sworn statements and to testify truthfully about the events giving rise to the lawsuit, an admission of wrongdoing, and a consent judgment, Workflow agreed to release Seybold and Kaminsky from all further liability. Doc. #146-6, PageID##1790-91.

Attorney John A. Gallagher represents Seybold and Kaminsky. As set forth in his affidavit, he determined that they were "all but certain to be found liable to plaintiff" on most of the claims asserted. Gallagher Aff. ¶¶2-3; Doc. #155-1, PageID#2269. He advised them that, under the circumstances presented, the proposed settlement was reasonable. *Id.* at ¶9. At no time did they discuss "the proffering of false, misleading and/or incomplete testimony." *Id.* at ¶10. Instead, Gallagher repeatedly advised Seybold and Kaminsky to tell the truth, and he is

---

[5] Ohio Revised Code § 2307.32(F) was recodified as Ohio Revised Code §2307.28(B).

confident that they did so, both before and after the settlement was reached. *Id.* at ¶¶5-6, 8, 11, 14-16.

In support of their argument that Seybold and Kaminsky failed to act in good faith, GNJ and Vento urge the Court to consider that Seybold and Kaminsky: (1) paid just $35,000 each to settle their claims with Workflow, while GNJ/Vento paid $650,000; (2) concealed the settlement from GNJ for several months; and (3) agreed to assist Workflow by providing sworn statements about what had transpired.

The fact that Seybold and Kaminsky settled their claims with Workflow for a fraction of what GNJ and Vento paid to do the same does not necessarily indicate bad faith. Indeed, the Court is not even required to conduct a proportionality assessment in each case. As noted in *Mahathiraj*, 84 Ohio App.3d at 561, 617 N.E.2d at 742, sometimes such calculations are of little value to the good faith determination.

Here, GNJ and Vento were accused of being active participants in the alleged wrongdoing. Workflow may well have decided that it was best to settle its claims against Seybold and Kaminsky early on, for a relatively small amount, in exchange for their cooperation in litigating the claims against GNJ and Vento. Corporations typically have deeper pockets than individual employees.

GNJ and Vento argue that Seybold and Kaminsky collectively earned approximately $534,000 in salaries and commissions during the course of their

18

employment at GNJ.[6] On the flip side, Seybold notes that, during the three years

he was employed at GNJ, he alone generated approximately $2.8 million in sales

for the company. Seybold Aff. ¶5; Doc. #143-4, PageID#1740. GNJ counters

that it earned a net profit of only $45,000 during the time Seybold and Kaminsky

were employed by GNJ. Vento Aff. ¶ 7; Doc. #146-3, PageID #1779.

Even assuming that these figures are correct, the Court finds that the

disproportionate settlement amounts do not equate to a finding of bad faith. The

$35,000 paid by Seybold and by Kaminsky is not an insignificant amount for an

individual employee. Although a jury may have ultimately determined that they

were legally responsible for a greater percentage of the damages claimed by

Workflow, this is not dispositive. As additional consideration for the release from

liability, Seybold and Kaminsky agreed to cooperate with Workflow in litigating the

claims against GNJ and Vento.

GNJ and Vento maintain that Seybold and Kaminsky engaged in collusive

conduct. However, there is no evidence to support such a finding. Yes, they

agreed, early on, to cooperate with Workflow and provide sworn statements about

the events leading up to the lawsuit. However, there is no evidence that they

---

[6]  It is not clear exactly how this figure was calculated. Vento avers that "GNJ
paid approximately $550,000 in commissions to Mr. Seybold and Rachel Neufeld,
collectively." Vento Aff. at ¶7; Doc. #146-3, PageID#1779. But, according to
Gallagher, Seybold earned a total of approximately $270,000 in salary and
commissions during the three years he was employed at GNJ. Kaminsky earned a
yearly salary of $110,000, but was paid no commissions; he worked at GNJ for
less than a year. Doc. #155, PageID##2267-68.

conspired with Workflow to provide false, misleading or incomplete testimony in exchange for a more favorable settlement.

It is undisputed that, although Seybold and Kaminsky finalized their settlement with Workflow in March of 2012, they did not disclose that fact to GNJ and Vento until July of 2012, on the date that Seybold was terminated. Vento Aff. ¶5, Doc. #146-3, PageID#1778-79; Seybold 10/29/13 Dep. at 16-17, Doc. #146-12, PageID#2204. According to Vento, as late as July of 2012, Seybold and Kaminsky continued to discuss with him a global joint settlement with Workflow. Vento avers that they discussed the possibility of Seybold and Kaminsky each contributing $100,000, and GNJ contributing $200,000 to $250,000. Vento Aff. ¶3, Doc. #146-3, PageID#1778-79.

In the Court's view, under the circumstances presented here, the fact that Seybold and Kaminsky waited until July of 2012 to tell GNJ and Vento about their settlements with Workflow says very little about whether they *entered into* those settlements in bad faith. Seybold explained that he did not tell Vento about the settlement any sooner because he was afraid of getting fired. Vento was angry about the lawsuit. Seybold 10/29/13 Dep. at 30; Doc. #146-12, PageID#2208.

GNJ also claims that Seybold and Kaminsky were deceitful in their April 2012, depositions when asked about whether they had already settled their claims with Workflow. But the record shows that when asked about this topic, they simply invoked the attorney-client privilege and refused to answer. Seybold Dep.

at 41-43, Doc. #119-1, PageID##964-66; Kaminsky Dep. at 171-74, Doc. #119-3, PageID##1247-50. They did not lie.

Based on the evidence in the record, it is clear that Seybold and Kaminsky knew that if the case went to trial, they were very likely to be found liable, and could be held responsible for significant damages. In order to minimize their risk, they agreed to enter into a settlement with Workflow, whereby they would admit liability, pay $35,000 each, and fully and truthfully disclose all that they knew about what had transpired. Their $35,000 settlements, while disproportionate to what GNJ and Vento eventually agreed to pay, are not so insubstantial as to raise suspicions of wrongdoing. Moreover, GNJ and Vento have failed to identify any evidence "indicating collusion, fraud or other tortious or wrongful conduct on the part of the settling parties." *Mahathiraj*, 84 Ohio App.3d at 562, 617 N.E.2d at 742.

The Court concludes that Seybold and Kaminsky settled their claims with Workflow in good faith, and are immune from claims for contribution pursuant to Ohio Revised Code § 2307.28(B). They are, therefore, entitled to summary judgment as a matter of law.

## IV. Conclusion

For the reasons set forth above, the Court SUSTAINS the Motion for Summary Judgment by Cross-Claim Defendants Andrew Kaminsky and Craig Seybold (Doc. #142), and OVERRULES AS MOOT the Motion of

21

Defendants/Crossclaim Plaintiffs GNJ Associates, Inc. d/b/a Proforma Spectrum Graphics and John Vento, Jr., to Strike Cross-Claim Defendants' Motion For Summary Judgment (Doc. #146).

Judgment shall be entered in favor of Cross-Claim Defendants Kaminsky and Seybold and against Cross-Claim Plaintiffs GNJ and Vento, on the claims for indemnification and contribution.

According to the Court's docket, the following claims remain pending:

1. Plaintiff Workflow's claims against Defendant Rachel Neufeld; and

2. Cross-claim Plaintiffs GNJ and Vento's cross-claims against Cross-Claim Defendant Rachel Neufeld.[7]

The Court VACATES the trial date of June 30, 2014. The Court will hold a conference call on July 18, 2014, at 9:00 a.m. to discuss the status of the outstanding claims against Neufeld. If the parties are able to resolve those claims prior to that date, eliminating the need for such conference call, they should notify the Court.

---

[7] Although Neufeld was not a party to the motion for summary judgment filed by Kaminsky and Seybold, the Court would be inclined to dismiss the cross-claims against Neufeld for the reasons discussed herein. The indemnity claim would be barred because the facts alleged do not give rise to an implied contract of indemnity. The contribution claim would be barred by Ohio Revised Code § 2307.25(B), because GNJ and Vento did not extinguish Neufeld's liability in their settlement, and she remains subject to liability on the claims Workflow asserted against her.

Date: June 26, 2014

WALTER H. RICE
UNITED STATES DISTRICT JUDGE